## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EQUAL EMPLOYMENT ) | |
| OPPORTUNITY COMMISSION, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO. |
| ) | |
| v. ) | **COMPLAINT** |
| ) | **JURY TRIAL DEMAND** |
| MURPHY FORD, INC. d/b/a MURPHY FORD ) | |
| LINCOLN MERCURY, ) | |
| Defendant. ) | |
| ----------------------------------------------------------- ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices that discriminate on the basis of gender and race, and to provide appropriate relief to Cynthia Bell ("Ms. Bell"), and a class of similarly situated female employees (the "class"), who were adversely affected by such practices. As articulated with greater particularity in paragraphs 7 and 8 below, the Commission alleges that during their employment, Ms. Bell and the class of female employees were subjected to sex based harassment through constant sexually inappropriate and offensive comments, touching, and indecent conduct which created a sexually hostile work environment.

The Commission further alleges that Ms. Bell, a black female, was specifically targeted by her supervisor, Defendant's Service Manager, because of her race and gender. As described in greater detail below, the Service Manager subjected Ms. Bell to pervasive, racially offensive sexual harassment, by constant and explicit references to sexual relations with a black woman. The Commission alleges that although Ms. Bell complained on numerous occasions about the illegal harassment, no remedial action was taken by Defendant to prevent and/or stop the inappropriate and

offensive conduct.

The Commission further alleges that the Defendant retaliated against Ms. Bell because she complained about the unwelcome harassment by Defendant's Manager, when it discharged Ms. Bell from her employment. As a result of the sexual/racial harassment and retaliatory discharge, Ms. Bell has suffered backpay and other economic losses, and severe emotional distress. Similarly, as a result of the sexual harassment, the female class members suffered severe emotional distress.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to §706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5(f)(1) and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §19981 A.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States for the Eastern District of Pennsylvania.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000(e)-5(f)(1) and (3).

4. At all relevant times, Defendant, Murphy Ford Inc., d/b/a Murphy Ford Lincoln Mercury (collectively referred to as "Defendant" and/or "Defendant Employer") has been continuously doing business in the State of Pennsylvania and the City of Chester and has continuously had at least fifteen (15) employees.

5. At all relevant times, Defendant Employer has continuously been an employer engaged

in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000(e)(b), (g) and (h).

## STATEMENT OF CLAIMS

6. More than thirty days prior to the institution of this lawsuit, Cynthia Bell filed a charge with the Commission alleging violations of Title VII by Defendant Employers. All conditions precedent to the institution of this lawsuit have been fulfilled.

7. Since at least December of 2002, Defendant Employer has engaged in unlawful employment practices at its Chester, PA facility in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000(e)-2(a)(1), by subjecting Cynthia Bell to a hostile environment based on her race and sex, as follows:

(a) Cynthia Bell was hired in December of 2002 as a Service Advisor in the Car Service Department. Throughout her employment, she was the only black female who worked in the Service Department. At all times, Ms. Bell maintained an exemplary performance record.

(b) Soon after her hire, Defendant's Service Manager and Ms. Bell's supervisor, Ronald DeMuro, began subjecting Ms. Bell to unlawful harassment, which included offensive sexual and racial comments, innuendos, and lewd behavior.

(c) Mr. DeMuro made racially offensive and derogatory comments to Ms. Bell. As if she could answer for the general population, he would ask, "Why do black people eat grits?"; quizzed her about black entertainers; and inappropriately commented on a sexual relationship he had with a black woman.

(d) DeMuro told Ms. Bell, " You know, I used to date a black woman and the sex was good."

(e) Despite Ms. Bell's objection and disinterest, DeMuro provided explicit details about his sexual relationship with a black woman. He explained in graphic detail how and where the two would have sexual encounters.

(f) Numerous comments were made in the presence of another service worker who observed that the conduct of DeMuro caused discomfort and upset to Ms. Bell.

(g) In or about March of 2003, Ms. Bell met privately with DeMuro and asked that he stop the sexual and racial harassment. He ignored her request and the conduct continued.

(h) Ms. Bell then complained directly to Defendant's owner, Daniel Murphy, about Mr. DeMuro's behavior. While Mr. Murphy thanked Ms. Bell for the information, he failed to take any steps to address her complaints or to stop the harassment.

(i) Mr. DeMuro continued to make sexually explicit comments and also engaged in physically inappropriate behavior. He would ask Ms. Bell to "come and sit on [his] face." On one occasion, he forcefully grabbed Ms. Bell's face and kissed her on her left cheek. Mr. DeMuro warned Ms. Bell that if she reported him, he would deny the incident ever occurred.

(j) Thereafter, Ms. Bell complained to Patricia Bailey, Defendant's Human Resources Manager, about Mr. DeMuro's inappropriate behavior. Ms. Bailey did not take any remedial action to address Ms. Bell's complaints.

(k) As a result of Mr. DeMuro's repeated acts of harassment, Ms. Bell also complained to Nancy Murphy, wife of Daniel Murphy. She too failed to take any remedial action to address her complaints, and the harassment continued.

(l) In further violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000(e)-2(a)(1), Defendant permitted a class of female employees to be subjected to a sexually hostile work environment. DeMuro's offensive conduct and sexual comments, including but not limited to,

comments about breasts, buttocks and other female body parts, continued without cessation at defendant's Chester facility affecting other female employees.

(m) Rebecca Rouse (age 20) was hired as a Receptionist in the Service Department in August of 2002. She experienced a constant barrage of sexually explicit comments and gestures from Mr. DeMuro throughout her employment. He constantly invited Ms. Rouse to "back up and sit on my face;" made sexually inappropriate comments about female customers; made crude gestures such as grabbing his crotch; and frequently made references to Ms. Rouse's legs as "tree trunks."

(n) Monica Bazis-Pitner was hired in October 2001 and worked as a Service Advisor. She also was subjected to sexually offensive conduct from Mr. DeMuro. Each day, Mr. DeMuro addressed her as "tits," and would make comments such as, "You have a great ass." Mr. DeMuro also asked Ms. Pitner to give him a "blow job" and grabbed his crotch in front of Ms. Pitner.

8. Since at least December October of 2003, Defendant Employer has engaged in unlawful employment practices at its Chester, PA facility, in violation of Section 704(a) of Title VII, 42 U.S.C. Section 2000e-3(a). These unlawful retaliatory practices include, but are not limited to, the following:

(a) On December 18, 2003, Ms. Bell again complained to Mrs. Murphy regarding Mr. DeMuro's inappropriate and offensive behavior. During this meeting, Ms. Bell informed Mrs. Murphy that she felt she had no choice, and had sought the advice of counsel because Defendant had ignored her complaints and done nothing to stop the harassment.

(b) On December 19, 2003, Ms. Bell was suddenly terminated from her employment for a pretextual reason.

(c) Upon information and belief, Defendant terminated Ms. Bell's employment because she continuously complained about the illegal conduct, received no response to her complaints, and sought legal counsel to discuss options concerning the unlawful harassment.

9. The effect of the practices complained of in paragraphs 7 and 8 above have been to deprive Cynthia Bell, a black female employee, of a harassment-free work environment, equal employment opportunities, and otherwise adversely affect her status as an employee because of her sex/race, and because she engaged in protected activity under Title VII.

10. The effect of the practices complained of in paragraphs 7 and 8 above have further deprived Rebecca Rouse and Monica Bazis-Pitner, as females, of a harassment free work environment, equal employment opportunities, and otherwise adversely affect their status as employees because of their sex.

11. The acts complained of in paragraphs 7 and 8 above were intentional and malicious.

12. The unlawful employment practices complained of in paragraphs 7 and 8 above were done with reckless indifference to the federally protected rights of female employees, and Ms. Bell as a black female employee.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Employer, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in sexual harassment and any other employment practice which discriminates on the bases of sex, race, and retaliation.

B. Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities for women, which provide for an harassment free work environment, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant Employer to institute and carry out anti-discrimination and harassment policies and complaint procedures.

D. Order Defendant Employer to institute and carry out complaint procedures which

encourage employees to come forward with complaints regarding violations of its policies against discrimination, harassment and retaliation.

E. Order Defendant Employer to institute and carry out a training program which shall promote supervisor accountability imposing on all managers and supervisory personnel a duty to actively monitor their work areas to ensure compliance with policies on non-discrimination and anti-harassment; and requiring all managers and supervisors to report any incidents and/or complaints of harassment and/or retaliation of which they become aware to the department charged with handling such complaints.

F. Order Defendant Employer to make whole Cynthia Bell, by providing appropriate back pay and front pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

G. Order Defendant Employer to make whole Cynthia Bell, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 7 and 8 above, including, but not limited to out-of-pocket losses, in amounts to be determined at trial.

H. Order Defendant Employer to make whole Cynthia Bell, and a class of similarly situated females, by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of in paragraphs 7 and 8 above, including pain and suffering, humiliation, embarrassment, loss of life's enjoyment and pleasures, depression, anxiety and inconvenience, in amounts to be determined at trial.

I. Order Defendant Employers to pay Cynthia Bell, and a class of similarly situated females, punitive damages for its malicious and reckless conduct described in paragraphs 7 and 8 above, in amounts to be determined at trial.

J.      Grant such further relief as the Court deems necessary and proper in the public interest.

K.      Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

          RONALD S. COOPER
          General Counsel

          JAMES L. LEE
          Deputy General Counsel

          GWENDOLYN YOUNG REAMS
          Associate General Counsel
          *U.S. EQUAL EMPLOYMENT*
          *OPPORTUNITY COMMISSION*
          1801 L. Street, NW
          Washington, DC 20507

          JACQUELINE H. MCNAIR
          Regional Attorney

          JUDITH A. O'BOYLE
          Supervisory Trial Attorney

          RACHEL M. SMITH
          Trial Attorney

          *EQUAL EMPLOYMENT OPPORTUNITY*
          *COMMISSION*
          Philadelphia District Office
          801 Market Street
          Penthouse, Suite 1300
          Philadelphia, PA 19107
          Telephone:  (215) 440-2642
          Facsimile:  (215) 440-2848
          rachel.smith@eeoc.gov